## General Motors Acceptance Corp. v. Colborn

*Lawrence Savige* and *R. Lawrence Coughlin,* for plaintiff.

*Daniel H. Jenkins,* for defendant.

LEACH, P. J., June 10, 1942.—At the trial it appeared from the evidence of plaintiff that the Fincher Motors, Inc., on June 19, 1940, delivered a car to John J. Brennan at his place of business in Sayre, Pa. The delivery was made under bailment lease with right to purchase. No lien was placed upon the certificate of title, which was procured by Brennan, and the Fincher Motors, Inc., assigned the lease to plaintiff without any lien being placed upon the certificate of title.

Brennan sold the car to defendant, who secured his certificate of title without notice of any claim by any other person. A writ of replevin later was issued by plaintiff, and a bond was filed by defendant. The amount due was about $600. Upon showing the above facts, plaintiff rested. A compulsory nonsuit was entered.

Plaintiff argues that the appellate courts of Pennsylvania construed the certificate of title as a means to prevent theft and that it is not a muniment of title. Thereupon the law of bailments should be applied, and the right of defendant rises no higher than that of his predecessor in title. His view of the law is set forth in Braham & Co. v. Steinard-Hannon Motor Co. et al., 97 Pa. Superior Ct. 19, which was cited with approval as late as Ambler National Bank v. Maryland Credit Finance Co., 147 Pa. Superior Ct. 496. The latter case expressly sets forth that it was citing the law before the Act of June 27, 1939, P. L. 1135, 75 PS §33, which provides in section 203 as follows:

"The certificate of title, when issued by the secretary showing a lien or encumbrance, shall be adequate notice to the Commonwealth, creditors, and purchasers that a lien against the motor vehicle, trailer, or semi-

trailer exists, and failure to transfer possession of the vehicle, trailer, or semi-trailer shall not invalidate said lien or encumbrance."

The notice of the change in the law is set forth in the title as follows:

". . . further amplifying and changing the provisions of said act relating to certificates of title, the correction, cancellation and assignment thereof, notices contained therein, and the rights of persons to apply for, receive and possess such certificates as agents, and declaring liens and encumbrances shown on such certificates to be lawful notice thereof to the Commonwealth, creditors and purchasers . . ."

We might remark in passing that this was before the Statutory Construction Act of May 28, 1937, P. L. 1019, section 58 of which sets forth "that the rule that laws in derogation of the common law are to be strictly construed, shall have no application to the laws of this Commonwealth hereafter enacted." Before the passage of the Statutory Construction Act courts would naturally hold that any statute changing the right of a bailor must be strictly construed.

The said act on its face provided for a lien which would follow the certificate of title and which would give notice to any intending purchaser or creditor of plaintiff's right. Plaintiff neglected to secure its lien by this very simple process. Had it done so, Brennan would have been unable to perpetrate fraud upon defendant.

We thereupon hold to the ancient maxim that where one of two innocent persons must suffer by the wrongdoing of the third he who arms the wrongdoer with the power to commit the wrong must suffer the effects of the wrongdoing.

### Order

Now, June 10, 1942, rule to take off compulsory nonsuit is discharged.